UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

    -against-

WAYNE CUSTIS,

           Defendant.

Copies Mailed/Faxed
Chambers of Edgardo Ramos

**OPINION & ORDER**

12 Cr. 214 (ER)

RAMOS, D.J.:

Wayne Custis is currently serving a 144-month sentence at FCI Fort Dix, a low security prison in New Jersey. Before the Court is his *pro se* motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). Doc. 543. For the reasons set forth below, Custis' motion is DENIED.

## I. BACKGROUND

### A. Prior Proceedings

On June 20, 2012, a grand jury in the Southern District of New York returned Superseding Indictment S1 12 Cr. 214 (ER) (the "Indictment"), charging Custis and nineteen co-defendants with conspiring to distribute more than 280 grams of crack cocaine and more than 50 kilograms of marijuana from 2001 to 2012, in violation of 21 U.S.C. § 846. *See* Doc. 18, Indictment. The Indictment further charged Custis and ten of his co-defendants with the use, possession, and discharge of firearms during and relation to that conspiracy, in violation of 18 U.S.C. §§ 924(c) and 2. On February 3, 2014, Custis pled guilty pursuant to a plea agreement to a lesser included offense of Count One and Count Two (brandishing a firearm).

Custis' conviction arose from his involvement with the Strip Boyz, a Yonkers Street Gang. The record shows that Custis was involved in several acts of violence in connection

with his gang activity. Custis was a "shooter," and on occasion defended the gang's territory from rivals. Doc. 387 at 2. The Government's sentencing submission indicates that he shot at a rival gang member in November 2010. *Id.* He also fought with several rival individuals while incarcerated at the Westchester County Jail in January 2013, following his arrest in this case. *Id.* at 3.

On February 4, 2015, the Court sentenced Custis to the mandatory minimum of 144 months in prison. Doc. 401. The Court found that Custis had committed "incredibly serious crimes." *Id.* at 8:21–22. The Court also noted that, given that Custis had shot another person, he was "lucky [to be] sitting here facing 12 years imprisonment," rather than a potential life sentence. *Id.* at 9:3–5. However, the Court also recognized that Custis had the support of many family members and friends, and believed that he was sincere in his efforts to change his life. *Id.* at 10:4–14.

### B.   Custis' Motion

Custis first submitted an informal request for home confinement to the Fort Dix warden on December 20, 2020. Doc. 543 at 1–2. The warden had not taken action on that request as of February 3, 2021. *Id.* at 2. Custis' motion is therefore ripe for adjudication.

Custis writes that he contracted COVID-19 on an undisclosed date. Doc. 543 at 1. This has caused him symptoms such as difficulty breathing while sleeping, and head aches and body pain. *Id.* He argues that medical care has been insufficient at Fort Dix because of numerous COVID cases and a shortness of medical staff. *Id.* He also argues that he is at risk of contracting a new strain of COVID-19 because he spends most of each day in a "12 man cell" that makes social distancing impossible. *Id.*

The Government opposes the motion. *See* Doc. 559. It notes that Custis has not identified any specific comorbidities placing him at increased COVID-19 risk. *Id.* at 4. It also argues that his violent offense conduct weighs against release. *Id.* at 5. The Government further notes that Custis has incurred several disciplinary infractions while in custody. *Id.* While some of these were minor, the Government cites to two infractions for "possessing a hazardous tool"—in one case a tattoo needle, and in another case an unidentified object that the government believes was a cell phone.[1] *Id.*

## II. LEGAL STANDARD

### A. 18 U.S.C. § 3582

Although a court may not normally "modify a term of imprisonment once it has been imposed," there are certain limited exceptions, including "compassionate release." *See United States v. Roberts*, No. 18 Crim. 528 (JMF), 2020 WL 1700032, at *1 (S.D.N.Y. Apr. 8, 2020) (internal quotation marks and citation omitted). Under 18 U.S.C. § 3582, a court may reduce a prisoner's sentence when it finds that there are "extraordinary and compelling reasons" that warrant such a reduction, but one of two conditions must first occur: Either the BOP Director may move the court to release the prisoner; or, alternatively, the prisoner himself may move the court, but only after he has fully exhausted all administrative rights. *See* 18 U.S.C. § 3582(c)(1)(A).

Prior to the First Step Act, sole authority rested with the BOP to determine what reasons, for purposes of compassionate release, are "extraordinary and compelling." *See* U.S.S.G. § 1B1.13 ("BOP Policy Statement"), Application Note 1(D). The BOP Policy

---

[1] The government bases this belief on the fact that the violation was accompanied by a related infraction for "contacting [the] public without auth[orization]." Doc. 559-1 at 1. Custis did not address the facts underlying these infractions in either of his submissions to the Court.

Statement includes as an "extraordinary and compelling reason" the existence of "a serious physical or medical condition…that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. 1(A)(ii)(I). It also permits the Court to consider whether the incarcerated person "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.* at § 1B1.13(2). However, the Second Circuit in *United States v. Brooker* recently held that the First Step Act also "freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions or compassionate release." *See* 976 F.3d 228, 237 (2d Cir. 2020).

If the sentencing court finds that "extraordinary and compelling reasons" exist, it "may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in Section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). These factors include the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence imposed, and the need to avoid unwarranted sentence disparities. 18 U.S.C. § 3553(a).

### III.  DISCUSSION

#### A.  Extraordinary and Compelling Reasons

Custis' motion focuses on the symptoms he experienced from COVID-19, as well as the possibility of re-infection. However, Custis has not identified that he suffers from any pre-existing conditions that are COVID-19 comorbidities. The risk of contracting COVID-19 alone, without other identified risk factors, does not constitute a basis for compassionate

release.[2]  *See, e.g.*, *United States v. Haney*, 454 F. Supp. 3d 316, 322–23 (S.D.N.Y. 2020) (denying compassionate release to 61-year old individual who did not suffer from deleterious health conditions that made him particularly vulnerable to COVID-19); *United States v. Walden*, No. 96 Cr. 962 (LAK), 2020 WL 7870670, at *2–4 (S.D.N.Y. Dec. 31, 2020) (denying compassionate release to individual when his documented health conditions "[did] not pose significant risks with respect to COVID-19.").  While Custis cites to *United States v. Campagna*, 16 Cr. 78-01 (LGS), 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020), the defendant in *Campagna* was immunocompromised; Custis has not shown that he suffers from an immunocompromising condition.

Custis has also not shown that his previous infection constitutes an extraordinary and compelling reason for release.  The Court recognizes that Custis suffered from physical symptoms such as body aches, and the Court does not intend to diminish the negative impact of a COVID-19 infection.  However, Custis has not shown that his symptoms have "substantially diminished" his ability to function at FCI Fort Dix so as to rise to the level of an extraordinary and compelling reason for release.  *See United States v. Gotti*, 433 F. Supp. 3d 613, 619 (S.D.N.Y. 2020) (denying compassionate release where, although defendant had several serious health conditions, he was able to manage these conditions in custody); *see also United States v. Pomales*, No. 16 Cr. 826 (LTS), 2020 WL 4677596, at *2–3 (S.D.N.Y. Aug. 8, 2020), *appeal docketed*, No. 20-3137 (2d Cir. Sept. 10, 2020) (denying compassionate release when defendant's condition did not substantially diminish his ability to care for himself).  Here,

---

[2] Custis notes that a new COVID variant exists at FCI Fort Dix.  Doc. 564.  It is true that new variants have been spreading across the country as a result of the coronavirus' mutations, and the science on these variants is still developing.  However, assuming Custis is correct about the existence of a different strain at Fort Dix than existed there previously, he has not identified any authority (such as CDC guidelines) sufficient to show that the risk from this strain merits a departure from the reasoning of the cases cited in this Opinion.

Custis' most recent medical records indicate that ███████████████████████████████████
███████████████████████████████████████████████████████████████████ Doc. 559 Ex. A
at 3.³  Combined with the fact that he has identified no comorbidities, the Court finds that Custis has not demonstrated extraordinary and compelling circumstances to support his motion for compassionate release.

   B.   The Remaining Section 3553 Factors

Additional factors under 18 U.S.C. § 3553(a) counsel against release even if extraordinary and compelling reasons were shown.  Custis' offense conduct was extremely serious, and included shooting at a rival gang member.  The Court has considered the severity of similar conduct in denying compassionate release to several of Custis' co-defendants.  *See United States v. Garrison*, Doc. 524 at 7 (noting his prior violent conduct), *see also United States v. David*, Docs. 519, 566 (same).  In denying David's release, the Court also considered an in-custody disciplinary infraction for possession of a hazardous tool, which Custis has also incurred.  *See* Doc. 519 at 7–8; Doc. 559-1 at 1.  Indeed, Custis' infraction occurred in 2020, even more recently than David's 2018 infraction.

The Court acknowledges that Custis has enrolled in programming while in custody, and that he is working to "become a positive [and] productive citizen."  Doc. 564 at 1.  The Court believes that Custis is genuinely remorseful for his actions and that he is committed to changing his life moving forward.  However, "rehabilitation alone cannot support a motion for compassionate release," when extraordinary and compelling reasons have not been established.  *See Walden*, 2020 WL 7870670, at *4.  Moreover, the countervailing factors of Custis' serious

---

³ Custis' medical records have been filed under seal.

offense conduct and § 3553(a)(6), the need to avoid unwarranted sentencing disparities among similarly situated individuals, also weigh against release for Custis.

## IV. CONCLUSION

For the reasons discussed, Custis' motion for compassionate release is DENIED.[4]  The Clerk of Court is respectfully directed to terminate the motion, docket number 543.

It is SO ORDERED.

Dated: April 14, 2021
New York, New York

EDGARDO RAMOS, U.S.D.J.

---

[4] Custis has also requested the aid of counsel.  Doc. 543 at 4.  For the Court to order the appointment of counsel, Custis must make a threshold showing that his position of likely to be of "substance"—i.e., have some likelihood of success on the merits—as well as weigh certain discretionary factors.  *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986).  Because he has failed to make this threshold showing, the Court DENIES his request.